**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 26-cv-XXXXX**

LIGHTS ARE OFF LLC,

                Plaintiff,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                Defendants.

_____/

## <u>COMPLAINT</u>

Plaintiff LIGHTS ARE OFF LLC ("Plaintiff" or "LAO") hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I.      JURISDICTION AND VENUE

1. This is an action seeking damages and injunctive relief for copyright infringement, under the Copyright Act, 17 U.S.C. §§ 101, 106(1)–(3), (5), 501(a) *et seq*., and the All Writs Act, 28 U.S.C. § 1651(a).

2. This Court has original subject matter jurisdiction over LAO's claims pursuant to the provisions of the Copyright Act 17 U.S.C. § 501 *et seq*.; 28 U.S.C. § 1338(a) – (b); and 28 U.S.C. § 1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may exercise personal jurisdiction over Defendants because Defendants structure their business activities to directly target consumers in the United States, through at least the fully interactive e-

commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to United States residents by setting up and operating e-commerce stores that target United States consumers; offer shipping to the United States; accept payment in U.S. dollars; and, on information and belief, have sold products using unauthorized copies of LAO's federally registered copyrighted works, including the distinctive characters embodied therein (collectively, the "Unauthorized Products") to residents of the United States. Each of the Defendants is committing tortious acts in the United States, is engaging in interstate commerce, and has wrongfully caused LAO substantial injury in the United States.

## II.     INTRODUCTION

4.      LAO filed this case to prevent e-commerce store operators who trade upon LAO's reputation and goodwill by selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate LAO's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. LAO is forced to file this action to combat Defendants' infringement of its registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the Internet. LAO has been, and continues to be, irreparably damaged

2

through Defendants' use of LAO's copyrighted works and therefore seeks injunctive and monetary relief.

### III.    THE PARTIES

5.     LAO is a Washington limited liability company specializing in horror multimedia, particularly online computer-animated horror short-form videos.  LAO has its principal place of business at 522 W. Riverside Avenue, Spokane Washington 99201-0580, United States. LAO created the video game at issue in this case, *Zoonomaly*, in 2024.

6.     *Zoonomaly* is a puzzle-based horror video game set in an "open world zoo," where players can explore freely while navigating and completing challenges in a nonlinear manner. *Zoonomaly*, which is available on the Steam gaming platform, allows players to progress in the game through multiple available paths.  *Zoonomaly* players solve puzzles within animal enclosures to collect key shards to stop a monster outbreak.  The game centers on exploration, puzzle solving, and survival.  While exploring the zoo and completing puzzles, players must defend themselves against monsters and survive.

7.     *Zoonomaly* has been well received by its players and the public, amassing more than 150,000 players on Steam and being featured in the Horror Game Awards March Showcase in 2024.  Some of the characters and character names made famous by *Zoonomaly* include, but are not limited to:



| ZooKeeper | |

| | |
|---|---|
| **Monster Smile Cat** | |
| **Smile Cat** | |
| **Monster Monkey** | |
| **Monster Giraffe** | |



| | |
|---|---|
| **Stick Spider Monster** |  |
| **Monster Bear** | |
| **Monster Fish** | |
| **Monster Elephant** | |

| | |
|---|---|
| **Friendly Frog** | |
| **Monster Rabbit** | |
| **Friendly Ostrich** | |
| **Friendly Bear** | |





| | |
|---|---|
| **Monster Koala** | |
| **Friendly Lizard** | |
| **Rock** | |
| **Bloom Machine** | |

8.      Before Defendants' acts described herein, LAO launched *Zoonomaly*. LAO has also registered *Zoonomaly*, including the characters embodied therein (the "Zoonomaly Copyrighted Works") with the United States Copyright Office.  A true and correct copy of the

7

record from the U.S. Copyright Office website for the Zoonomaly Copyrighted Works is attached hereto as **Exhibit 1**.  The Zoonomaly Copyrighted Works embody the distinctive characters found in paragraph 7 above.

9.      Among the exclusive rights granted to LAO under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Zoonomaly Copyrighted Works to the public.  Since first publication, the Zoonomaly Copyrighted Works have been featured in *Zoonomaly*, including on Steam's landing page for the game.[1]

10.      In addition to *Zoonomaly*, LAO has previously marketed and sold plush dolls of a character in the game *Zoonomaly* ("LAO Products").

11.      Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to LAO.  On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

12.      On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for LAO to learn Defendants' true identities and the exact interworking of their network.  If Defendants provide additional credible information regarding their identities, LAO will take appropriate steps to amend the Complaint.

---

[1] *See* https://store.steampowered.com/app/2101890/Zoonomaly/.

## IV.    DEFENDANTS' UNLAWFUL CONDUCT

13.     The success of *Zoonomaly* has resulted in significant infringement of the Zoonomaly Copyrighted Works.  Because of this, LAO has implemented an infringement detection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps.  Recently, LAO has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), Dhgate.com ("DHGate"), eBay, Inc. ("eBay"), Roadget Business PTE Ltd. ("SHEIN"), Walmart, Inc. ("Walmart"), and Context Logic, Inc. d/b/a Wish.com ("Wish"), including the e-commerce stores operating under the Seller Aliases.  The Seller Aliases target consumers in this Judicial District and throughout the United States.  According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services because of increased sales from foreign online infringers.  *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 2**).

14.     Because the infringing products sold by offshore online infringers do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020.  *Id.*  When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits.  *Id.*  Additionally, it is estimated that the importation of infringing goods cost the United

States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

15.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders."  Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts.  **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 4** at p. 39.  Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]."  **Exhibit 3** at 186–87.  Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." *Id.* at p. 161.

16.     Defendants have targeted sales to United States residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases;

offer shipping to the United States; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to United States residents.

17. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, Alipay, Amazon Pay, PayPal, Pex, and/or Stripe. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. LAO has not licensed or authorized Defendants to copy or distribute the Zoonomaly Copyrighted Works, and none of the Defendants are authorized retailers of LAO Products.

18. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

19. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

20. Defendants are collectively causing harm to LAO's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single

11

negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes collective harm to LAO in a way that individual actions, occurring alone, might not.

21.     E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by brand owners, such as LAO, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

22.     Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite LAO's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to LAO.

23.     Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and/or sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from LAO, have knowingly and willfully used, and continue to use, unauthorized copies of the Zoonomaly Copyrighted Works in connection with the advertisement, distribution, offering for sale, and/or sale of Unauthorized Products into the United States over the Internet.

12

24.     Defendants' unauthorized use of Zoonomaly Copyrighted Works in connection with the advertising, distribution, offering for sale, and/or sale of Unauthorized Products into the United States, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming LAO.

## COUNT I
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 and 501)

25.     LAO hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

26.     The Zoonomaly Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*.

27.     LAO owns the Zoonomaly Copyrighted Works.  LAO has complied with the registration requirements of 17 U.S.C. § 411(a) for the Zoonomaly Copyrighted Works.  The Zoonomaly Copyrighted Works are protected by a copyright registration number which was duly issued to LAO by the United States Copyright Office.  At all relevant times, LAO has been, and still is, the owner of all rights, title, and interest in the Zoonomaly Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

28.     The Zoonomaly Copyrighted Works are published on the Internet and available to Defendants online.  As such, Defendants had access to the Zoonomaly Copyrighted Works via the Internet.

29.     Without authorization from LAO, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the Zoonomaly Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products. Defendants' derivative works are virtually

13

identical to and/or are substantially similar to the look and feel of the Zoonomaly Copyrighted Works.  Such conduct infringes and continues to infringe the Zoonomaly Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1) – (3), (5).

30.     Defendants reap the benefits of the unauthorized copying and distribution of the Zoonomaly Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

31.     Defendants have unlawfully appropriated LAO's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Zoonomaly Copyrighted Works, including the distinctive characters embodied therein.

32.     On information and belief, Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to LAO's rights.

33.     Defendants, by their actions, have damaged LAO in an amount to be determined at trial.

34.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause LAO great and irreparable injury that cannot fully be compensated or measured in money.  LAO has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, LAO is entitled to a preliminary and permanent injunction prohibiting further infringement of the Zoonomaly Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, LAO prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with

them be temporarily, preliminarily, and permanently enjoined and restrained from—pursuant to 17 U.S.C. § 502, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65:

    a. reproducing, distributing copies of, making derivative works of, or publicly displaying the Zoonomaly Copyrighted Works in any manner without the express authorization of LAO;

    b. passing off, inducing, or enabling others to sell or pass off any products as LAO Products or any other product produced by LAO, that is not LAO's or not produced under the authorization, control, or supervision of LAO and approved by LAO for sale under the Zoonomaly Copyrighted Works;

    c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of LAO, or are sponsored by, approved by, or otherwise connected with LAO;

    d. further infringing the Zoonomaly Copyrighted Works and damaging LAO's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for LAO, nor authorized by LAO to be sold or offered for sale, and which bear any of the Zoonomaly Copyrighted Works;

2) Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon LAO's request, those with notice of the injunction, including

without limitation, any websites and/or online marketplace platforms like AliExpress, Amazon, DHGate, eBay, SHEIN, Walmart, and Wish shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of infringing goods using the Zoonomaly Copyrighted Works;

3) As a direct and proximate result of Defendants' infringement of the Zoonomaly Copyrighted Works, LAO is entitled to damages as well as those Defendants' profits, pursuant to 17 U.S.C. § 504(b);

4) Alternatively, and at LAO's election prior to any final judgment being entered, LAO is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

5) LAO is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 19th day of March 2026.          Respectfully submitted,


/s/ Clarissa A. Rodriguez
Clarissa A. Rodriguez
Fla. Bar No. 38175
Laura M. Reich
Fla. Bar No. 22792
Clarissa A. Rodriguez
Fla. Bar No. 38175
HARPER MEYER LLP
201 S. Biscayne Blvd., Suite 800
Miami, FL 33131
Telephone: (305) 577-3443
Facsimile: (305) 577-9921
crodriguez@harpermeyer.com
lreich@harpermeyer.com

*Counsel for Plaintiff LIGHTS ARE OFF LLC*

16

## **SCHEDULE A**

This page is the subject of LAO's contemporaneously prepared Motion to File Schedule A to the Complaint Under Seal, which LAO intends to promptly file upon the assignment of this civil case. Accordingly, this page has been redacted pursuant to L.R. 5.4(b)(1).